CHARLES H. CARREON
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Attorney Pro Se



FILED _____ LODGED _____
RECEIVED _____ COPY _____

1 | MAR 2 2 2011 | 1

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Charles H. Carreon | Case No.: CV 11-39 TUC FRZ |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT [15 U.S.C. § 1692f(6)]; VIOLATION OF OREGON UNFAIR TRADE PRACTICES ACT [ORS 646.607] AND OREGON UNLAWFUL COLLECTION PRACTICES ACT [ORS 646.639(1)(g) and (2)(b)]; RESCISSION OF CONTRACT FOR FRAUD, UNILATERAL MISTAKE AND BREACH OF COVENANT OF GOOD FAITH; COMMON COUNT - ASSUMPSIT; INJUNCTIVE RELIEF |
| vs. | |
| Toyota Financial Service CDE Corporation, Toyota Motor Credit Corporation, Lithia Motors, Inc., FKA Lithia Toyota Scion, and Does 1 - 10 | |
| Defendants. | |
| | JURY TRIAL DEMANDED |

## THE PARTIES

1. Plaintiff Charles H. Carreon ("Plaintiff") is a citizen of the United States, a resident of Tucson, Arizona.

2. Defendants TOYOTA FINANCIAL SERVICES CDE CORPORATION ("TFS") and TOYOTA MOTOR CREDIT CORPORATION ("TMCC") are California Corporations with their corporate headquarters at 19001 S. Western Avenue, Torrance, CA 90501.

3. Defendant Doe 1 is a business, type unknown, operating in Tucson, Arizona, whose true name will be sought via discovery and this pleading amended to state its true name. Doe 1 is the agent, servant, co-conspirator, employee of TFS and TMCC.

4.  Defendant Doe 2 is an individual who is the owner, employee, agent, servant, or co-conspirator of Doe 1.

5.  Doe 3 is an employee or agent of TFS and/or TMCC with the first name of "Anna," against whom the allegations are set forth below.

6.  Does 4 - 10 are additional persons responsible in some way for the harms suffered by plaintiff as alleged herein, and will be named by their true names upon discovery thereof.

7.  Lithia Motors, Inc., FKA Lithia Toyota Scion ("LMI") is a publicly-traded Fortune 800 company, one of America's largest automotive retailers featuring domestic and import franchises.  LMI stores serve urban and rural populations throughout the Western and Midwest United States.

## SUBJECT MATTER JURISDICTION

8.  This is an action under 15 U.S.C. § 1692k(d), the private right of action statute of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1692p; wherefore, this Court has jurisdiction under 28 U.S.C. § 1331.  The Court has pendent jurisdiction of all state law claims.

## VENUE

9.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2).

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

10. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

11. On or about January 13, 2006, Plaintiff was shown a 2006 Toyota Prius VIN JTDKB20U667065503 (the "2006 Prius") at the LMI auto retail store then known as Lithia Toyota Scion, 1420 N. Riverside, Medford, Oregon 97501.

12. A large sticker on the window of the 2006 Prius said "60 MPG" or a statement to that effect, thus representing to Plaintiff as a reasonable person that the 2006 Prius would extract an average of 60 miles of travel from each gallon of gasoline.  Plaintiff inquired of a car salesman acting in his capacity as the employee and/or agent of LMT, whether the 2006 would actually obtain 60 miles per gallon of gasoline, and the salesman

confirmed that it would.  However, he stated that the 2006 Prius would gain mileage efficiency over time, and would also improve depending on the climate.

13. In truth and in fact, the statements on the window sticker and made by the salesman were false.

14. The window sticker and the salesman's statements as alleged above were material misstatements of fact made with knowledge of their falsity, and with the intention to induce Plaintiff to buy the 2006 Prius.

15. The oral and written misrepresentation that the 2006 Prius would obtain 60 miles per gallon was a material misstatement of fact upon which Plaintiff relied in making his decision whether or not to purchase the 2006 Prius.

16. In reliance upon the representation that the 2006 Prius would obtain 60 miles per gallon, Plaintiff bought the 2006 Prius.  When LTI delivered the  2006 Prius to Plaintiff, the sticker had been removed.  Mileage per gallon initially was approximately 28 miles per gallon, and when Plaintiff asked the salesman why the promised 60 miles per gallon was not materializing, the salesman said that the efficiency of the 2006 Prius would gradually increase over the course of quite a few months.  This was true, and gradually, over many months and years, the 2006 Prius reached a plateau of 41.9 miles per gallon.

17. When Plaintiff had obtained financing and was presented with all of the documents to purchase the Prius, they were presented for signature in an office by a person other than the salesman, a woman referred to herein as the "Closer."  Although the salesman had spoken at length about the reliability of the 2006 Prius, the Closer took a different tack, and informed Plaintiff that the batteries in the 2006 Prius were extremely costly, were not covered by the warranty, and could cost as much as $20,000 to replace.  The Closer strongly urged Plaintiff to purchase a contract of insurance titled the "Platinum" Toyota Extra Care Vehicle Service Agreement at a cost of $1,813 (the "Platinum Insurance,") and specifically represented that the contract would provide coverage for replacement of batteries until the 2006 Prius had run for 100,000 miles.  The Platinum Insurance was issued by Toyota Motor Insurance Services, Inc.  The cost of the Platinum Insurance was

incorporated into the total amount financed, and thus the installment payment contract for the 2006 Prius incorporates a contract of insurance.

18. The installment contract provides that Plaintiff shall perform the contract by making a downpayment of $3,500 and seventy-two (72) payments of $555.97 beginning February 27, 2006 and ending on January 27, 2012 (the "Prius Contract").  At paragraph 22, the Prius Contract states:  "Oregon Law Applies: This contract will be governed by Oregon Law."  The Prius Contract, drafted by LMI, was a contract of adhesion, and should be strictly construed against the drafter and its assignees.  Although at the time of the contract signing, a document accepting the 2006 Prius "As Is" and waiving claims against LMI, was tendered to Plaintiff for signature, he declined to sign it.  On information and belief, LMI assigned the Prius Contract to TFS and/or TMCC.

19. Under Oregon law, the Prius Contract incorporates a covenant of good faith and fair dealing, obliging LMI and its assignees TFS and TMCC to do everything necessary to provide Plaintiff with the benefits of the Prius Contract, to do nothing to deprive Plaintiff of the benefits thereof, and to do nothing to impede Plaintiff's performance of his duties in order to preserve his rights under the Prius Contract.

20. In the course of performance, during approximately August 2010, Plaintiff became aware of billing inaccuracies in his monthly statements, resulting in the conclusion that TFS and TMCC were not accurately billing him.  Plaintiff wrote several letters to TFS and TMCC at the payment processing center, but they went unanswered.  Plaintiff wrote letters to the General Counsel for TFS and TMCC, but they also went unanswered.  On information and belief, pursuant to a preconceived plan that has been used to coerce payments from many consumers, TFS and TMCC resolved to engage in unlawful efforts to coerce payments from Plaintiff on their terms, as further alleged below.

21. The Oregon Unfair Trade Practices Act provides, Oregon Revised Statutes ("O.R.S.") § 646.607 provides:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

(1) Employs any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods or services, or collection or enforcement of an obligation;

(2) Fails to deliver all or any portion of real estate, goods or services as promised, and upon request of the customer, fails to refund any money that has been received from the customer that was for the purchase of the undelivered real estate, goods or services and that is not retained by the seller pursuant to any right, claim or defense asserted in good faith. This subsection does not create a warranty obligation and does not apply to a dispute over the quality of real estate, goods or services delivered to a customer;

\*\*\*; or

(6) Employs a collection practice that is unlawful under ORS 646.639." (Emphasis added.)

22. ORS 646.639 provides in relevant part:

(2) It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:
(a) \*\*\*
(b) Threaten arrest or criminal prosecution.
(c) Threaten the seizure, attachment or sale of a debtor's property when such action can only be taken pursuant to court order without disclosing that prior court proceedings are required.

23. By virtue of their status as assignee(s) TFS and/or TMCC thereby assumed non-delegable duties to exercise their contractual security interest,[1] in a manner compliant with ORS 79.069,[2] that provides in relevant part:

"Secured party's right to take possession after default.
(1) After default, a secured party:
(a) May take possession of the collateral; and
(b) Without removal, may render equipment unusable and dispose of collateral on a debtor's premises under ORS 79.0610.
(2) A secured party may proceed under subsection (1) of this section:
(a) Pursuant to judicial process; or
(b) ***Without judicial process, if it proceeds without breach of the peace.***"
(Emphasis added.)

---

[1] *Rand v. Porsche Financial Services*, 167 P.3dd 111 (Arizona Ct. Appeals, 2007); *see also, Mimnaugh v. Toyota Motor Credit Corp.,* Case No. 94-C-4607 (N.D. Ill. July 11, 2005).

[2] A.R.S. 47-9609 is identical, and both are verbatim adoptions of the Uniform Commercial Code, whose drafters commented regarding the liability of secured interest-holders for the conduct of repossessors: "***In considering whether a secured party has engaged in a breach of the peace . . . courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral.***"

24. The business of self-help automobile repossession is inherently dangerous, a fact of which TFS and TMCC were aware.  On information and belief, TFS and TMCC engaged Doe 1 and Doe 2 because of their past experience with each other, in which all of said defendants had agreed to skirt, evade, or openly defy the requirements of law with respect to repossession of vehicles and collections of debts.

25. On March 16, 2011, after receiving a voicemail from counsel for TFS and TMCC, Plaintiff returned the call and was connected in a conference call with Doe 3, an individual with the first name of "Anna," represented to be an employee, agent or attorney of TFS and TMCC.  During the conversation, Doe 3 told Plaintiff what she thought the correct accounting was, and spoke to Plaintiff in unyielding terms, stating that there was only one way he could "keep the car," which was to accept her accounting and agree to make payment of all amounts she claimed were currently due and resume making payments pursuant to the Prius Contract.  Doe 3 refused to discuss any other matters, and ended the conversation when Plaintiff attempted to articulate how he believed he had been subjected to unlawful collection practices that had resulted in a clear breach of the Prius Contract by TFS and TMCC that precluded any further lawful efforts to repossess the 2006 Prius until the resolution of this pending action.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS DOE 1, DOE 2, TOYOTA FINANCIAL SERVICES AND TOYOTA MOTOR CREDIT CORPORATION FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

26. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

27. The 2006 Prius is registered in Arizona with License Number 40LN26.

28. On information and belief, Plaintiff alleges that TFS and TMCC did not perfect a purchase money lien on the 2006 Prius under ARS  47-9234(A).

29. The Prius Contract does not state any of the following information that is required under Arizona repossession law, to wit, ARS 13-1813.B:

> 1. A statement that it is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default.

2. A statement that notice of default will be mailed to the address on the loan agreement and that it is the responsibility of the owner to keep the listed address current.

3. The maximum penalty for unlawful failure to return a motor vehicle subject to a security interest.

30. As above alleged, TFS and TMCC ignored all of Plaintiff's written communications attempting to obtain a fair accounting for his payments, and engaged Doe 1 and its employee or agent Doe 2, to repossess the 2006 Prius.

31. Neither TFS, TMCC, Doe 1 or Doe 2 ever provided Plaintiff with notification of intent to repossess under ARS 13-1813.A.2:

The secured creditor notifies the owner in writing, by certified mail return receipt requested, that the owner is ninety days late in making a payment and is in default. The notice shall include the following:

(a) A statement stating:

"You are now in default on loan agreement # _____. If you fail to return the _____ (year of vehicle, make, model) within thirty days you will be subject to criminal prosecution."

(b) The business address and hours of operation for return of the vehicle.

(c) The maximum penalties for unlawful failure to return a motor vehicle subject to a security interest.

32. On January 17, 2011, acting at the direction of Doe 1 as engaged by TFS and TMCC, Doe 2 arrived at Plaintiff's home after dark, at approximately 7:45 p.m. at 2165 S. Avenida Planeta, Tucson, Arizona 85710 ("Plaintiff's home") and demanded of Plaintiff's wife that she relinquish the 2006 Prius. Since neither Plaintiff nor the Prius were at Plaintiff's home, Plaintiff's wife informed Doe 1 of these facts. Doe 1 then announced that since Plaintiff had "refused to relinquish the car, he is guilty of a felony, and will be arrested." The actions of Does 1 and 2 were made on behalf of and with specific authorization of TFS and TMCC with full knowledge of their wrongfulness, and constituted a threat to take unlawful action that neither TFS and TMCC or Doe1 were authorized to perform in an effort to collect a debt that was disputed, a threat made without the intention to perform the repossession solely in order to coerce Plaintiff to pay the amounts wrongfully demanded by TFS and TMCC, and a threat to subject Plaintiff to arrest and prosecution in order to coerce payment and thereby collect a debt that was known to be disputed.

33. By so doing, TFS and TMCC and Doe 1 all violated 15 U.S.C. 1692f(6)

> "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property [when] —
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property…."

34. Liability for the above-alleged acts of Doe 1 and Doe 2 is imputed by operation of law to TFS and TMCC, because auto repossession is inherently dangerous, because they are bound by their non-delegable duty, because a security holder is responsible for the conduct of any persons it employs in the activity of repossession pursuant to ORS 79.069 and ARS 47-9609, and pursuant to other applicable legal precedents.

35. Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. §1692i (2)(A).

36. Plaintiff is entitled to fees, costs and attorneys fees 15 U.S.C. §1692i (3).

## SECOND CLAIM FOR VIOLATION OF OREGON UNFAIR TRADE PRACTICES ACT [ORS 646.607] AND OREGON UNLAWFUL COLLECTION PRACTICES ACT [ORS 646.639(1)(g) and (2)(b)] AGAINST DEFENDANTS TFS, TMCC,  DOE 1, DOE 2, AND DOE 3

37. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

38. By the acts hereinabove alleged, in violation of ORS 646.607(1), Doe 1, Doe 2, TFS and TMCC, have willfully employed unconscionable tactics in connection with the collection or enforcement of Plaintiff's payment obligation under the installment contract for the purchase of the 2006 Prius.

39. By the acts hereinabove alleged, in violation of ORS 646.607(6), Doe 1, Doe 2, TFS and TMCC have willfully employed a collection practice that is unlawful under ORS 646.639 (2)(b), by threatening Plaintiff's arrest and criminal prosecution.

40. By threatening to repossess the 2006 Prius when such action can only be taken pursuant to court order while specifically denying that prior court proceedings are required, to wit, the adjudication of this action, Doe 3, TFS and TMCC, have willfully employed a collection practice that is unlawful under ORS 646.639 (2)(c).

41. To prevent future unlawful repossession efforts, Plaintiff has no adequate remedy at law, and is entitled to injunctive relief under ORS 646.641(1).

42. Plaintiff has suffered pecuniary injury as a result of the above-alleged willful use and employment by the impairment of use of the 2006 Prius, which he cannot sell now that it has become the object of repossession efforts, and from impaired use of the vehicle, due to concern that the said defendants will undertake further unlawful efforts to repossess the 2006 Prius.

43. Plaintiff is entitled to statutory damages under ORS 646.641(1) in the amount of not less than $200.

44. The above-alleged conduct of the said defendants was willful and malicious, wherefore Plaintiff is entitled to an award of punitive damages under ORS 646.641(1).

**THIRD CLAIM FOR RELIEF AGAINST LITHIA MOTORS, INC., TOYOTA FINANCIAL SERVICES AND TOYOTA MOTOR CREDIT CORPORATION FOR FOR RESCISSION OF CONTRACT FOR FRAUD, UNILATERAL MISTAKE, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

45. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

46. As above-alleged, on or about January 13, 2006, Plaintiff was shown the 2006 Prius at the LMI auto retail store.

47. A large sticker on the window of the 2006 Prius said "60 MPG" or a statement to that effect, thus representing to Plaintiff as a reasonable person that the 2006 Prius would extract an average of 60 miles of travel from each gallon of gasoline. Plaintiff inquired of a car salesman acting in his capacity as the employee and/or agent of LMT, whether the 2006 would actually obtain 60 miles per gallon of gasoline, and the salesman confirmed that it would. However, he stated that the 2006 Prius would gain mileage efficiency over time, and would also improve depending on the climate.

48. In truth and in fact, the statements on the window sticker and made by the salesman were false.

49. The window sticker and the salesman's statements as alleged above were material mis-statements of fact made with knowledge of their falsity, and with the intention to induce Plaintiff to buy the 2006 Prius.

50. The oral and written misrepresentation that the 2006 Prius would obtain 60 miles per gallon was a material misstatement of fact upon which Plaintiff relied in making his decision whether or not to purchase the 2006 Prius.

51. In reliance upon the representation that the 2006 Prius would obtain 60 miles per gallon, Plaintiff bought the 2006 Prius. When LTI delivered the 2006 Prius to Plaintiff, the sticker had been removed. Mileage per gallon initially was approximately 28 miles per gallon, and when Plaintiff asked the salesman why the promised 60 miles per gallon was not materializing, the salesman said that the efficiency of the 2006 Prius would gradually increase over the course of quite a few months. This was true, and gradually, over many months and years, the 2006 Prius reached a plateau of 41.9 miles per gallon.

52. When Plaintiff had obtained financing and was presented with all of the documents to purchase the Prius, they were presented for signature in an office by the Closer. Although the salesman had spoken at length about the reliability of the 2006 Prius, the Closer took a different tack, and informed Plaintiff that the batteries in the 2006 Prius were extremely costly, were not covered by the warranty, and could cost as much as $20,000 to replace. The Closer strongly urged Plaintiff to purchase Platinum Insurance at a cost of $1,813 that the Closer specifically represented would provide coverage for replacement of batteries until the 2006 Prius had run for 100,000 miles. The Platinum Insurance was issued by Toyota Motor Insurance Services, Inc., and the cost of the Platinum Insurance was incorporated into the total amount financed under the Prius Contract that provides for a downpayment of $3,500 and seventy-two (72) payments of $555.97 beginning February 27, 2006 and ending on January 27, 2012. On information and belief, LMI assigned the Prius Contract to TFS and/or TMCC.

53. Under Oregon law, the Prius Contract incorporates a covenant of good faith and fair dealing, obliging LMI and its assignees TFS and TMCC to do everything necessary to

provide Plaintiff with the benefits of the Prius Contract, to do nothing to deprive Plaintiff

of the benefits thereof, and to do nothing to impede Plaintiff's performance of his duties

in order to preserve his rights under the Prius Contract.

54. Plaintiff was slow to believe that the 2006 Prius was not going to do better than 41.9

miles per gallon, and moved away from Oregon to Arizona in March 2007; thus, making

demand of LMI became impractical, and after asking for information at various Toyota

service centers on the low mileage results, it was apparent that there was really nowhere

to make a legal demand for performance of the false representation.  Further, the conduct

of TFS and TMCC in response to a simple request for an accurate accounting makes it

clear that any prior demand would have been futile and accordingly Plaintiff's demand

for rescission via this action should be found timely.

55. Plaintiff has only very recently discovered that the Closer's statements about the

Platinum Insurance were false.  During January – March 2011, the 2006 Prius began

having starting problems, and Plaintiff had to call a towing service to get a "jump start."

Plaintiff was informed that the battery needed to be replaced.  Because Plaintiff's

Platinum Insurance eligibility was in the Toyota service computer, Plaintiff sought, then

and there, to confirm that the battery would be replaced free of charge.  The service

technician, however, advised that the Platinum Insurance policy did not cover the battery

in question.  Plaintiff then reviewed the Platinum Insurance policy "Plan Specific

Coverage and Exclusions" and discovered that "Batteries" are excluded items.  The

battery that required replacement was in fact not the main power batteries that the Closer

told Plaintiff cost $20,000, but rather a smaller battery that could be replaced for under

$300.  However, the expense sparked the discovery that Plaintiff had been defrauded in

the sale of the Platinum Insurance.

56. Plaintiff specifically alleges that the Closer's statements that the Platinum Insurance

would cover battery replacement were material false representations, made to Plaintiff to

induce the sale of the Platinum Insurance, upon which Plaintiff reasonably relied in a

sincere belief that the Platinum Insurance did so provide.  Plaintiff further alleges, that

once LMI's Closer disclosed that the power batteries for the 2006 Prius could cost up to $20,000 to replace, Plaintiff would not have bought the 2006 Prius but for the fact that the Closer represented that the cost of the battery replacement would be covered by the Platinum Insurance.  Plaintiff further specifically alleges the discovery of the said fraud no earlier than March 13, 2011.

57. The fact that the 2006 Prius, and all other Prius automobiles sold under the Toyota brand during that model year, could not attain anywhere near the "60 MPG" mileage efficiency proclaimed in writing and reinforced by oral sales representations, and that Platinum Insurance policies were being sold with the misrepresentation that they would cover the installation of batteries was known to TFS and TMCC, that took their position as assignees of the Prius Contract with full knowledge that it had been procured by fraud.

58. Accordingly, Plaintiff was fraudulently induced to enter into the Prius Contract by LMI's salesman and LMI's Closer.

59. Alternatively, Plaintiff entered into the Prius Contract due to unilateral mistakes that were known or should have been known to LMI's salesman and LMI's Closer.

60. The contract is voidable for fraud or unilateral mistake in formation at the instance of Plaintiff.

61. The duty of good faith and fair dealing obliged TFS and TMCC to service the Prius Contract diligently, to credit Plaintiff with all payments he had made, not to assess late fees when payments were timely made, to communicate responsively with Plaintiff to adjust any billing and accounting errors, and not to abuse its/their position as lienholder in an unconscionable fashion by, for example, attempting to coerce payments by making unlawful threats of repossession.

62. Plaintiff therefore further seeks rescission of the Prius Contract on the grounds that TFS and TMCC have breached the covenant of good faith and fair dealing inherent in every contract made in the State of Oregon, by acting in a manner intended to deprive him of the benefits of the contract, and in failing to perform all acts necessary to provide Plaintiff with the benefits of the contract.  Said breaches of the covenant of good faith

and fair dealing include but are not limited to the failure to provide accurate accountings of payments made, the failure to credit Plaintiff with payments made, the refusal to communicate with Plaintiff in response to his requests for accountings to which he was entitled, and the use of unconscionable tactics in an effort to collect a debt, including the unlawful use of repossession tactics as previously alleged herein in detail.

63. Plaintiff has tendered possession of the 2006 Prius to TFS and TMCC in exchange for a return of all consideration paid by Plaintiff, to wit, the $3,500 down payment, plus the 56 payments that TFS and TMCC concede Plaintiff has made,[3] amounting to $31,134.32, for a total of $34,634.32.

64. TFS and TMCC have refused to accept return of the 2006 Prius in exchange for a return of the consideration paid by Plaintiff.

65. Plaintiff has no adequate remedy at law, and prays for a decree of rescission, rescinding the contract on the grounds of fraud in formation.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS TFS AND TMCC AND LMI FOR COMMON COUNT – ASSUMPSIT FOR FAILURE OF CONSIDERATION

66. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

67. Plaintiff has made payments to defendants TFS and TMCC on the Prius Contract that LMI induced Plaintiff to enter into, totaling no less than $34,634.32.

68. As hereinabove alleged, LMI fraudulently represented the 60 Miles Per Gallon capability of the 2006 Prius and the true scope of coverage of the Platinum Insurance, for which reason there has been a failure of the consideration LMI was obligated to provide.

69. As hereinabove alleged, TFS and TMCC have breached the Prius Contract in a manner intended to take all the value of the payments made and to deprive Plaintiff of possession

---

[3] Plaintiff does not concede that TFS's and TMCC's accounting is correct, but in the interests of presenting a demand based on the defendants' own figures, adopts the 56 payments record.

of the 2006 Prius, for which reason there has been a failure of the consideration that TFS and TMCC were obliged to provide.

70. Wherefore, Plaintiff has suffered damages in the amount of $34,634.32.

## FIFTH CLAIM FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS TFS AND TMCC AND LMI TO ENJOIN VIOLATIONS OF 42 U.S.C. § 1983

71. Plaintiff restates and realleges each and every allegation made herein as if set forth in full hereat.

72. The threat made by Doe 2 and Doe 1 to have Plaintiff arrested was action under color of law within the meaning of 42 U.S.C. § 1983 and a breach of the peace in aid of an effort to force Plaintiff to relinquish personal property, to wit, the 2006 Prius, and/or to coerce payment of a debt under false pretenses.

73. TFS and TMCC were under a non-delegable duty to assure that the repossession of the 2006 Prius was accomplished lawfully.

74. Doe 3 has threatened to repossess the 2006 Prius notwithstanding the pendency of this action.

75. There exists a substantial risk that any effort at repossession by TFS and TMCC will engage the services of law enforcement personnel whose involvement would constitute state action.

76. Wherefore Plaintiff requests that TFS, TMCC, Doe 1, Doe 2, Doe 3, and any persons acting in concert with them be enjoined from any repossession efforts during the pendency of this action.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

ON THE FIRST CLAIM FOR RELIEF:

1. For economic damages according to proof;

2. For statutory damages of $1,000;

3. For non-economic damages according to proof;

4. For punitive damages;

1     5.  For costs and attorneys fees;

2 ON THE SECOND CLAIM FOR RELIEF:

3     6.  For economic damages according to proof;

4     7.  For statutory damages of $200;

5     8.  For punitive damages;

6     9.  For costs and attorneys fees;

7 ON THE THIRD CLAIM FOR RELIEF:

8     10. For a decree of rescission;

9 ON THE FOURTH CLAIM FOR RELIEF:

10     11. For damages in the amount of $34,634.32;

11 ON THE FIFTH CLAIM FOR RELIEF:

12     12. For injunctive relief to prevent any further efforts at repossession by specified defendants

13         and persons acting in concert with them;

14 ON ALL CLAIMS FOR RELIEF, for judgment and such other and further relief as the Court

15 deems just.

16

17 Dated: March 22, 2011              CHARLES H. CARREON

18

19

20                          CHARLES H. CARREON

21                          Attorney Pro Se

22

23

24

25

26

27

28

## JURY DEMAND

Pursuant to F.R.Civ.P. 38(b), Plaintiff demands a jury trial.

Dated:  March 22, 2011

CHARLES H. CARREON

CHARLES H. CARREON
Attorney Pro Se

## PROOF OF SERVICE

I am a citizen of the United States with a business address of 2165 S. Avenida Planeta.  I am over the age of 18 years, and not a party to the within action.  I declare that, on the date subscribed below, I served the following document described as

FIRST AMENDED COMPLAINT

_____

upon counsel of record herein by the method(s) described below:

PHILIP A. OVERCASH #022964
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
Philip.overcash@kutakrock.com

[✓]   by email to the above-referenced email address

[ ]   by personal delivery to the above-referenced addresses

[✓]   by placing the same in envelopes addressed to the above recipients, U. S. Mail, with first class postage fully prepaid, deposited into an official mailbox located in Tucson, Arizona.

[ ]   by Federal Express for overnight delivery.

Executed at Tucson, Arizona, on March 22, 2011 _____.

CHARLES CARREON