PHILIP A. OVERCASH #022964
KUTAK ROCK LLP
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ  85253-2742
(480) 429-5000
Facsimile: (480) 429-5001

*Attorneys for Defendant*
*Toyota Motor Credit Corporation d/b/a Toyota*
*Financial Services*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHARLES H. CARREON,<br><br>　　　　Plaintiff/Counter-defendant,<br><br>v.<br><br>TOYOTA MOTOR CREDIT COPORATION d/b/a TOYOTA FINANCIAL SERVICES, et al.,<br><br>　　　　Defendants/Counter-plaintiffs. | CASE NO.  4:11-cv-00039-TUC-FRZ<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA MOTOR CREDIT CORPORATION d/b/a/ TOYOTA FINANCIAL SERVICES'S MOTION TO DISMISS COUNTS I, III, IV AND V OF PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE** |

　　　　Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Toyota Motor Credit Corporation d/b/a Toyota Financial Services ("TMCC"), which is improperly named in this action as separate defendants Toyota Financial Services CDE Corporation and Toyota Motor Credit Corporation, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss with Prejudice (the "Motion").

　　　　Although Plaintiff incorrectly named them as separate defendants, Toyota Financial Services and Toyota Motor Credit Corporation are one entity.  TMCC is responsible for the financing of Toyota vehicle contracts throughout the United States.  TMCC is not the manufacturer, retailer, or distributor of any vehicles, and is not involved in the sale,

4848-7243-5977.1

performance, or manufacture of any vehicle it finances. Toyota Financial Services is a proprietary trade name used by TMCC, but is not a separate corporate entity.

Plaintiff's claims against TMCC, as alleged in Counts I, III, IV and V, lack any legal basis to support the relief requested, and therefore, Plaintiff has failed to state a claim for which relief can be granted. The defects in Counts I, III, IV and V of Plaintiff's Amended Complaint cannot be cured through amendment, and therefore, these Counts should be dismissed with prejudice, and without leave to amend.

## STATEMENT OF FACTS

The facts of the Amended Complaint, as directed to TMCC, are uncomplicated and straightforward. Plaintiff and Defendant Lithia Toyota entered into a consumer credit finance agreement related to Plaintiff's purchase of a vehicle on January 13, 2006. Dkt. 12, ¶¶ 11, 16, 18, etc. This contract was assigned to TMCC for servicing sometime thereafter. Dkt. 12, ¶ 18. Plaintiff has made any and all payments on this account directly to TMCC. Dkt. 12, ¶¶ 20 and 63. TMCC allegedly caused certain "billing inaccuracies" in regards to Plaintiff's account, and allegedly attempted to repossess the collateral on January 17, 2011. Dkt. 12, ¶¶ 20, 32.

On or about January 18, 2011, Plaintiff filed his Original Complaint as "Attorney Pro Se." Dkt. 1. On or about March 22, 2011, Plaintiff filed his Amended Complaint, again appearing as "Attorney Pro Se." Dkt. 12. Plaintiff is not licensed to practice law in the State of Arizona, but is an "active" attorney in the State of California. *See* http://www.azbar.org/findalawyer*; see also Exhibit A,* "State Bar of California Attorney Search Results." As a licensed attorney, Plaintiff's representations to this Court, and conduct toward opposing counsels, is governed not only by the requirements of Rule 11, Fed.R.Civ. P., but also the Rules of Professional Conduct.[1]

Plaintiff alleges that TMCC's actions entitle him to relief under the Fair Debt

---

[1] By signing any paper presented to the Court, the attorney certifies that it is not being presented for an improper purpose, that the arguments are warranted and nonfrivolous, that the factual contentions have evidentiary support, and that all denials are warranted on the evidence. Rule 11, Fed.R.Civ. P.

1  Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("**FDCPA**") and Oregon's Unlawful
2  Collection and Business Practices laws.  Dkt. 12, ¶¶ 71-76.  Plaintiff also alleges that
3  TMCC's actions warrant Rescission, Failure of Consideration, and Declaratory Relief
4  against TMCC under 42 U.S.C. 1983.  Dkt 12.  To support his Counts and prayers for relief,
5  Plaintiff alleges that he became aware of "billing inaccuracies in his monthly statements" in
6  August 2010. Dkt. 12, ¶ 20.  Plaintiff alleges to have attempted to advise TMCC of this billing
7  error, but his letters were unanswered. *Id.*  Plaintiff further alleges that TMCC "engaged" Doe
8  1 and Doe 2 to attempt to repossess his Prius on January 17, 2011. Dkt. 12, ¶ 32.  Plaintiff also
9  alleges that an "employee, agent or attorney" of TMCC (Doe 3) "unyielding[ly]" spoke to him
10 on March 16, 2011.  Dkt. 12, ¶ 25.  Plaintiff also alleges Lithia Toyota misrepresented the
11 miles per gallon the Prius could achieve and misstated the features of the Extended Warranty
12 and Prius battery. Dkt. 12, ¶¶ 12-17.

13  As will be demonstrated herein, Plaintiff has failed to state a claim against TMCC in
14 Counts I, III, IV and V.  Therefore, these Counts should be dismissed with prejudice, and
15 without leave to amend.

## LEGAL ARGUMENTS AND AUTHORITIES

17  In analyzing a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim
18 upon which relief can be granted, the court must determine whether Plaintiff can prove any
19 set of facts in support of his claims which would entitle him to relief.  *Vasconcellos v.*
20 *Wells Fargo Home Loan Mortgage, Inc.,* 2010 WL 3732232, *2 (D.Or. 2010); *Narramore*
21 *v. HSBC Bank USA, N.A.,* 2010 WL 2732815, *2-*3 (D.Ariz. 2010); *see also* FED. R. CIV.
22 P. 12(b)(6).  The court must take all factual allegations as true, and construe them in the
23 light most favorable to the plaintiff.  *Vasconcellos,* 2010 WL at *2; *Salazar v. Lehman*
24 *Brothers Bank*, 2010 WL 3998047, *1 (D.Ariz., 2010).   However, "[c]onclusory
25 allegations of law and unwarranted inferences are insufficient to defeat a motion to
26 dismiss for failure to state a claim." *Salazar,* 2010 WL at *1.

27  "Rule 8's pleading standard demands more than 'an unadorned, the-defendant-
28 unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* --- U.S. ---, ---, 129 S.Ct. 1937,

1949 (2009). "A complaint that offers nothing more than naked assertions will not suffice." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but not 'shown' – 'that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Iqbal,* 129 S.Ct. at 1949-50 (2009) (same). A litigant's claims must be dismissed when it is beyond a doubt that he is unable to prove any facts which would entitle him to relief. *Vasconcellos,* 2010 WL at *2.

Based upon these standards, Counts I, III, IV and V in Plaintiff's Amended Complaint fail to set forth a claim to relief that is plausible and fail to state a legal entitlement to relief. Therefore, these Counts should be dismissed with prejudice, and without leave to amend.

### I.   COUNT I - FDCPA

Count I of Plaintiff's Amended Complaint essentially alleges that TMCC failed to respond to Plaintiff's letters and then wrongfully attempted to repossess his vehicle. Dkt. 12, ¶¶ 31-32. Plaintiff alleges that violations of "ARS 47-9234(A)," A.R.S. 47-9609, A.R.S. 13-1813, and "ORS 79.069," equate to violations of sections 1692f(6), 1692i(2)(A) and 1692i(3) of the FDCPA. Dkt. 12, ¶¶ 33-36. Plaintiff provides no legal support for these assertions. For the reasons elaborated upon herein, this Count should be dismissed with prejudice.

#### A.   **The FDCPA Does Not Apply**

Count I of Plaintiff's Amended Complaint should be dismissed with prejudice because the FDCPA does not apply to loan servicers and creditors like TMCC. Congress' intent in creating the FDCPA was to "eliminate abusive debt collection practices by *debt collectors*...." 15 U.S.C. 1692(e) (emphasis added). Congress did not enact the FDCPA to regulate loan servicers or creditors, and no such intent is articulated in the language of the statute. 15 U.S.C. 1692, *et seq.* Original creditors, loan services, and financers are specifically exempt from the provisions of the FDCPA. *Id.*

The FDCPA defines a "debt collector" as "any person…in any business the

principal purpose of which is the collection of debts, or who regularly collects or attempts to collect…debts owed or due…another." 15 U.S.C. 1692a(6).  A "creditor" is considered to be "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term *does not include* any person to the extent that he receives an assignment or transfer of a debt *in default* solely for the purpose of facilitating collection of such debt for another." *See* 15 U.S.C. 1692a(4)(emphasis added).  The FDCPA "explicitly excludes persons who collect…a debt which was not in default at the time it was obtained by such person." *Kellers v. Ocwen Loan Servicing, LLC*, 2009 WL 2899813, *2 (D.Or. 2009) (internal citations and quotation marks omitted) (in dismissing plaintiff's FDCPA claims, the court found that a loan servicer was not a debt collector as defined by the FDCPA.). **"[The FDCPA] does not apply to creditors attempting to collect their own debt."** *Narramore,* 2010 WL at *10; 15 U.S.C. 1692, *et seq.*   [Emphasis added.]

   Plaintiff has alleged that TMCC is a "California Corporation[]," that "LMI assigned the Pruis Contract" to TMCC, and that "[i]n the course of performance…Plaintiff became aware of billing inaccuracies." Dkt. 12, ¶¶ 2, 18 & 20.  Plaintiff does not allege that TMCC is a debt collector, nor does Plaintiff allege that the Prius Contract was assigned to TMCC after it was in default. Dkt. 12.  Conversely, Plaintiff alleges to have sent payments directly to TMCC throughout the extent of his contract, up until October 2010, and disputes that the contract was ever in default.[2]   Dkt. 12, ¶¶ 18, 20, 63. Additionally, even if TMCC were subject to the provisions of the FDCPA, Plaintiff has failed to "show" how TMCC's alleged failure to respond to his letters or alleged violations of various statute constitutes an FDCPA violation.  *See* 15 U.S.C. 1692, *et seq*; *Twombly,* 550 U.S. at 555; *Iqbal,* 129 at 1949-50.

   The plain language of the FDCPA, coupled with Plaintiff's Amended Complaint, demonstrates that Count I fails to state a claim.  Therefore, this count should

---

[2] In paragraph 63, Plaintiff alleges to have sent 56 payments to TMCC towards the balance of his contract, beginning February 2006.  Based upon Plaintiff's calculations, Plaintiff ceased making payments October 2010, although the Contract was to continue until January 2012.

be dismissed. *Kellers,* 2009 WL at *2; *Narramore,* 2010 WL at *12; *Twombly,* 550 U.S. at 555.

### B. Arizona Law Does Not Apply

Assuming, *arguendo*, that this Court allows Plaintiff's FDCPA claims to proceed, Count I should still be dismissed because Plaintiff has based his FDCPA claims upon a misapplication of Arizona law.

According to Plaintiff's Amended Complaint, "[P]aragraph 22, [of] the Prius Contract states: 'Oregon Law Applies: This contract will be governed by Oregon Law.'" Dkt. 12, ¶ 18. Forum selection clauses such as these are interpreted in accordance with general principals of contract interpretation. *Sheasley v. Orr Felt Co.,* 2010 WL 4273230, *3 (D.Or., 2010); *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1249 (9th Cir. 2009). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 2000). "[T]he courts of the Ninth Circuit give the words of a contract their 'common or normal meaning' unless circumstances show that a more specialized meaning is intended." *Sheasley*, 2010 WL at *3, (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir. 1987)). Courts presume that every contract provision was intended to accomplish some purpose, and that none are superfluous. *Sheasley,* 2010 WL at *3.

The terms of the Prius Contract's forum selection clause are clear: the Contract shall be interpreted in accordance with Oregon law. Dkt. 12, ¶ 18. Plaintiff has alleged that TMCC committed multiple violations of Arizona law when attempting to repossess his vehicle. Plaintiff also alleges violations of Oregon law based upon this same conduct. Dkt. 12, ¶¶ 28-31, 38-42. Plaintiff does not provide any legal support for his assertion that the same conduct can violate both Oregon and Arizona law. Additionally, per the clear and unambiguous language in the contract, which was drafted and executed in Oregon, TMCC's actions to enforce and/or perform the contract are governed by Oregon

law. *Klamath Water Users Protective Ass'n,* 204 F.3d at 1210.

Furthermore, at the time of contract formation, neither TMCC nor Defendant Lithia Toyota, could have envisioned that the vehicle would be located in and subject to a dispute in Arizona. Plaintiff's logic would require the contract requirements of all fifty (50) states (and Puerto Rico) to be included in every finance agreement, for every product financed. Such a burden is unrealistic and impossible to accomplish, as many state requirements would contradict one another and render the contract vague, unintelligible, and ultimately unenforceable. Arizona law is inapplicable to this matter, and therefore, all allegations referencing Arizona law should be dismissed with prejudice. *Sheasley*, 2010 WL at *3.

Assuming further, *arguendo*, that this Court applies the FDCPA to TMCC, and believes that Arizona law is applicable to this matter, Count I should still be dismissed. Plaintiff has misapplied the Arizona Criminal Code in an attempt to subject TMCC to FDCPA liability.

The first "violation" of Arizona law is alleged in A.R.S. 47-9234(A). Dkt. 12, ¶ 28. However, no such section of Arizona law exists. *See* A.R.S. 47-9101, *et seq.* (Title 47, Chapter 9, governing "Secured Transactions"). Additionally, Plaintiff has provided no factual support for his allegation that, "TMCC did not perfect a purchase money lien on the 2006 Prius." Dkt. 12, ¶ 28; *See Iqbal,* 129 S.Ct. at 1949 (Pleading standards demand more than "un unadorned, the-defendant-unlawfully-harmed-me accusation."). For these reasons, "A.R.S.§47-9234(A)" should be disregarded, and the allegations related to this section should be dismissed with prejudice.

The second "violation" of Arizona law Plaintiff tries to apply is from A.R.S. §13-1813. Dkt. 12, ¶¶ 29 & 31. Plaintiff first alleges that the Prius Contract was required to include the statutory language cited in A.R.S. §13-1813(B)., and next alleges that by failing to provide "notification of intent to repossess," TMCC has committed multiple violations of the FDCPA. *Id.* However, Plaintiff has misstated both of these code sections, and has failed to state a claim under either.

First, as is more fully discussed above, Arizona contract requirements are inapplicable because the contract was entered into in Oregon. *Sheasley,* 2010 WL *3 (Courts give contracts their common and normal meaning); Dkt. 12, ¶ 18. Second, Plaintiff has taken the statutory language of A.R.S. §13-1813 completely out of context.

A.R.S. §13-1813 is a criminal statute used against vehicle *owners* who fail to return vehicles subject to a security interest. The requirements of this section are only applicable in the event that a secured party chooses to criminally prosecute an owner for failure to return the secured vehicle. A.R.S. §13-1813. Should a secured party *choose* to proceed with criminal charges, the language recited in A.R.S. §13-1813(B) must be included in the finance agreement. A.R.S. §13-1813(B). There is no case which has held that the language in A.R.S. §13-1813(B) must be included in every finance agreement. Accordingly, all allegations based upon A.R.S. §1813(B) should be dismissed with prejudice.

Second, Plaintiff has misquoted A.R.S. §13-1813(A), and used this selective quotation to distort the meaning of A.R.S. §13-1813(A). In its entirety, A.R.S. §13-1813(A) reads:

> A person commits unlawful failure to return a motor vehicle subject to a security interest if all of the following apply:
> 1. The person fails to make a payment on the lien for more than ninety days.
> 2. The secured creditor notifies the owner in writing, by certified mail return receipt requested, that the owner is ninety days late in making a payment and is in default. The notice shall include the following:
>    a) A statement stating: "You are now in default on loan agreement #_____. If you fail to return the _____ (year of vehicle, make, model) within thirty days you will be subject to criminal prosecution."
>    b) The business address and hours of operation for return of the vehicle.
>    c) The maximum penalties for unlawful failure to return a motor vehicle subject to a security interest.
> 3. *The owner fails to cure the default within thirty days.*
> 4. *With the intent to hinder or prevent the enforcement of the secured creditor's security interest, the owner knowingly fails to do either of the following:*

> *a) Return the motor vehicle to the secured creditor.*
> *b) Allow the secured creditor to take possession of the motor vehicle.*

A.R.S. §13-1813(A) (emphasis added).

The plain language of the statute is clear, and should be interpreted in accordance with is clear and common meaning. *Blevins v. Government Employees Ins. Co.,* -- P.3d ---, ---, 2011 WL 1086768, *3 (Ariz.App. Div., 1, 2011). Like A.R.S. §13-1813(B), the provisions of 13-1813(A) are clearly aimed at providing criminal penalties against vehicle *owners* who fail to return vehicles subject to a security interest. Subsections 1 through 4 are elements that must be satisfied before a secured party will have a cause of action for "unlawful failure to return a motor vehicle subject to a security interest." A.R.S. §13-1813. If all of these elements are met, a secured party can bring criminal charges against a vehicle owner. This section is not intended to expose a secured party to liability under the FDCPA or any other statute, and no case has so held.

Plaintiff also alleges that TMCC violated A.R.S. §47-9609 while attempting to repossess his vehicle. Dkt. 12, ¶ 34. To support this assertion, Plaintiff alleges that "the above-alleged acts of Doe 1 and Doe 2 [are] imputed by operation of law." *Id.* Plaintiff provides no other factual support and no legal support for this "conclusory" assertion. *Iqbal,* 129 S.Ct. at 1949-50; Dkt. 12. A.R.S. §47-9609 states that a secured party may repossess a vehicle if it does so pursuant to judicial process, or without a breach of the peace. Plaintiff has provided no set of facts which would allow this Court to conclude that TMCC breached the peace when attempting to repossess the vehicle. Furthermore, Plaintiff provides no factual or legal support for his assertion that any alleged breach of the peace would equate to FDCPA liability. Even if the actions of Doe 1 and Doe 2 were imputed to TMCC, which TMCC denies, such attribution cannot legally equate to FDCPA liability for TMCC, as creditors and loan services are specifically exempt from the provisions of the FDCPA. *See* 15 U.S.C. §1692, *et seq.*; *see also Kellers,* 2009 WL at *2; *Narramore,* 2010 WL at *12. Additionally, no case has held a creditor liable under the FDCPA for the acts of a debt collector.

Based upon a plain reading of the contract, Arizona law is inapplicable to this matter. Furthermore, even if Arizona law were applicable, Plaintiff has failed to state a claim under "ARS 47-9234(A)," A.R.S. 13-1813, and A.R.S. 47-9609. Therefore, Count I should be dismissed with prejudice. *See Twombly,* 550 U.S. at 555; *see also Iqbal,* 129 S.Ct. at 1949-50.

### C. Plaintiff has Failed to State a Claim Under "O.R.S 79.069"

Should this Court fail to dismiss Count I for the above reasons, this Count should still be dismissed on the basis that Plaintiff has failed to state a claim under "O.R.S. 79.069." Dkt. 12, ¶ 23.

Plaintiff alleges that TMCC has assumed a "non-delegable dut[y]" under "ORS 79.069," and that TMCC is "responsible for the conduct of any person it employs." Dkt. 12, ¶¶ 23, 34. However, "ORS 79.069" does not exist in the Oregon statutes. *See* O.R.S. 79.0101, *et seq.* (Chapter 79 entitled "Secured Transactions"). Additionally, even if Plaintiff had cited to an existing statute, Plaintiff's allegations under "ORS 79-069" solely amount to conclusory allegations, void of any factual support. *Iqbal,* 129 S.Ct. at 1949-50.

It is alleged that "because auto repossession is inherently dangerous…[and TMCC is] bound by [its] non-delegable duty…[and] because a security holder is responsible for the conduct of any person it employs," TMCC is (therefore) liable under the FDCPA. Dkt. 12, ¶ 34. However, as fully detailed above, the FDCPA does not apply to creditors, nor is there any Congressional intent which would allow the acts of a debt collector to be "imputed" to creditors under the FDCPA. 15 U.S.C. 1692, *et seq; see also Gorman v. Wolpoff & Abramson, LLP,* 435 F.Supp.2 1004, 1011 (N.D.Cal., 2006) ("A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all.") Again, there is no case which has held that a creditor is liable under the FDCPA for its debt collector's alleged wrongdoing.

Because the acts of Does 1 and 2 cannot be "imputed" to TMCC for the purposes of liability under the FDCPA, Count I of Plaintiff's Amended Complaint should be dismissed.

### D. Count I should be dismissed with prejudice

For the reasons set forth herein, Count I of Plaintiff's Amended Complaint should dismissed with prejudice, as a matter of law, and without leave to amend. The allegations against TMCC contained in Count I have failed to state any legal right to relief under the FDCPA. A litigant's claims must be dismissed when it is beyond a doubt that he is unable to prove any facts which would entitle him to relief. *Vasconcellos,* 2010 WL at *2. As the FDCPA is not applicable to creditors, nor can a debt collector's actions be imputed to create FDCPA liability to a creditor, no amount of amending will cure the defect in this Count. *See Ellis v. GMCA Morg., Inc.*, 2011 WL 899636, *2 (D.Or. 2011); *Vasconcellos,* 2010 WL at *2.

Plaintiff cannot legally state an FDCPA violation against TMCC, as a matter of law. Accordingly, Count I of the Amended Complaint should be dismissed, as to TMCC, with prejudice and without leave to amend.

### II. COUNT III – RESCISSION

Count III of Plaintiff's Amended Complaint is a prayer for Rescission based upon "Fraud, Unilateral Mistake, and Breach of the Covenant of Good Faith and Fair Dealing." Dkt. 12, p. 9. However, Plaintiff has failed to state a cause of action against TMCC under any of these theories, and further, rescission is not an available remedy based upon the facts as stated. For these reasons, Count III should be dismissed with prejudice.

Within Count III, Plaintiff again alleges to have bought a Prius from Lithia Toyota, and cites to many representations regarding the Prius's mileage and battery that Plaintiff contends were false. Dkt. 12, ¶¶ 46-52, 54-57. Plaintiff further alleges that "all other Prius automobiles sold under the Toyota brand during that model year, could not attain anywhere near the '60 MPG' mileage efficiency proclaimed," Dkt. 12, ¶ 57, and also that TMCC was assigned "the Prius Contract with full knowledge that it had been procured by fraud." Dkt. 12, ¶ 57. In closing, Plaintiff seeks rescission due to fraud, unilateral mistake, breach of good faith and fair dealing. Dkt. 12, p. 9.

First, Plaintiff's allegations regarding the fuel economy of "all other Prius

automobiles" are not based upon any facts whatsoever, and should be dismissed. *Iqbal,* 129 S.Ct. 1949-50. Plaintiff has not alleged to be an expert in the area of Prius fuel economics, nor has Plaintiff alleged that any party to this action has any knowledge to this effect. Dtk. 12. To the contrary, TMCC was solely a financing servicer for Plaintiff's Prius purchase, and has no knowledge regarding this Prius, or any other's, fuel economy. Dkt. 12, ¶ 18. Plaintiff also alleges that TMCC had "knowledge" of the "fraud." These allegations are completely unfounded, void, and not based upon any identifiable fact. *Iqbal,* 129 S.Ct. 1949-50. Plaintiff does not allege that TMCC was a party to the original contract, nor does Plaintiff provide any allegations regarding how TMCC could have or would have had any knowledge of the circumstances surrounding the contract. Dkt. 12. Additionally, Plaintiff's own allegations demonstrate that he does not have any right to rescission, by the fact that he voluntarily ceased making payments on the contract in October 2010. Dkt. 12, ¶ 65. Count III can and should be dismissed on these "unadorned" and "naked assertions" alone. *Iqbal,* 129 S.Ct. 1949-50.

Assuming *arguendo* that Plaintiff has properly plead sufficient claims against TMCC for fraud, unilateral mistake, and breach of good faith and fair dealing, Count III still fails because rescission is an inappropriate remedy that this Court cannot provide. "To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning." *Sims v. Paramount Gold and Silver Corp.,* 2010 WL 5364783, *4 (D.Ariz.) (quoting *Reed v. McLaws,* 56 Ariz. 556, 562 (1941). Rescission "is to unwind the transaction and to put the parties in the same position they would have been in if the transaction had not been entered into-so far as possible." *Fowler v. Cooley,* 239 Or.App. 338, FN 5 (2010) (quoting *Daugherty v. Young,* 47 Or.App. 585, 591 (1980)). Rescission can be effectuated *only* by mutual consent of both parties to the contract. *Ezell v. Burton,* 339 Fed.Appx. 759, 760 (C.A.9, 2009) (citing *Bates v. Chronister,* 100 Nev. 675 (1984) and *Holland v. Crummer Corp.,* 78 Nev. 1 (1962)). Furthermore, "[i]n the consumer context, rescission must occur prior to a material change in the property…." *Automotive Holdings, LLC v. Phoenix Corners Portfolio, LLC,* 2010 WL 1781007, *6 (D.Ariz., 2010).

Rescission is inappropriate if the condition of the property has materially changed. *Id.*

Here, Plaintiff has alleged that he has tendered possession of the 2006 Prius to TMCC in exchange for a refund of $34,634.32.[3] Dkt. 12, ¶ 63. Plaintiff further alleges that TMCC has refused to accept this tender. Dkt. 12 ¶ 64. Based upon the allegations in Plaintiff's own Amended Complaint, dismissal by this Court is appropriate. Rescission is not an available remedy for Plaintiff because TMCC has rejected his rescission request. Dkt. 12, ¶ 64; *Ezell,* 339 Fed.Appx. at 760 (rescission occurs only with mutual consent of both parties.).

Additionally, rescission is inappropriate because the property which is the subject of the rescission has been materially changed. *Automotive Holdings, LLC*, 2010 WL at *6. Plaintiff purchased the vehicle in January 2006, and has enjoyed the benefit of its use and utility for over five (5) years. Dkt. 12, ¶ 11. Plaintiff also presumably drove the subject vehicle from Oregon to Arizona. Dtk. 12, ¶ 54. It is an indisputable fact that the vehicle has been materially altered since contract inception, and the Court can take judicial notice of that fact. F.R.E. 201(b) (The court can take judicial notice of a fact not subject to reasonable dispute because it is either generally known without the jurisdiction, or capable of accurate and ready determination by sources whose accuracy cannot be reasonably questioned.).

Plaintiff has also alleged that rescission is appropriate because he has no adequate remedy at law. Dkt. 12, ¶ 65. However, Plaintiff has requested statutory damages and declaratory relief under various theories of liability, and thus, clearly has an adequate remedy at law. Dkt. 12, pp. 8-9; *Moss v. U.S. Secret Service*, -- F.Supp.2d --, --, 2010 WL 4450407, *11 (D.Or., 2010) (The issuance of equitable relief requires the likelihood of immediate and irreparable harm and an inadequate remedy at law. Where plaintiff has a claim for damages, he/she has an adequate remedy at law.).

---

[3] It is important to note that Plaintiff's "tender" was electronically mailed to counsel for TMCC on March 22, 2011, the same day the Amended Complaint was filed. However, the tender was inexplicably dated June 4, 2010.

As Plaintiff cannot state a legal claim for rescission, and has also failed to factually support such a claim, Count III should be dismissed. Additionally, as Count III is legally deficient, and cannot be made appropriate through amendment, this Count should be dismissed with prejudice and without leave to amend. *Iqbal,* 129 S.Ct. 1949-50; *Ellis,* 2011 WL at *2.

### III. COUNT IV – FAILURE OF CONSIDERATION

Count IV of Plaintiff's Amended Complaint should also be dismissed with prejudice. This Count prays for a return of all monies Plaintiff has paid under the contract, due to "failure of consideration," and an assertion that TMCC has "intended to take all of the value of the payments made and to deprive Plaintiff of possession." Dkt. 12, ¶¶ 69-70. Plaintiff asserts that failure of consideration entitles him to damages in the amount of $34,634.32. *Id.* Plaintiff provides no factual or legal support for his assertions.

Consideration is one of the elements necessary to create a valid and enforceable contract. *Sterling Sav. Bank v. JHM Properties, LLC,* 717 F.Supp.2d 1142, 1149 (D.Or., 2010) (Consideration exists if there is any benefit to the defendant or any detriment to the plaintiff.); *Barinaga v. JP Morgan Chase & Co.,* -- F.Supp.2d --, --, 2010 WL 4338326, *5 (D.Or., 2010). The sufficiency of consideration is evaluated from the time of contract formation. *Armored Group, LLC v. Supreme Corp.,* 2010 WL 3940459, *5 (D.Ariz., 2010).

As stated in the Amended Complaint, Plaintiff purchased a vehicle and entered into a finance agreement, which was later assigned to TMCC. Dkt. 12, ¶¶ 11 & 18. Based upon these facts, it is apparent that TMCC extended credit to Plaintiff for funding the vehicle purchase in consideration of Plaintiff's promise to repay these funds. To prevail on the failure of consideration claim, Plaintiff must prove that he received no benefit in exchange for the contract, and that TMCC suffered no detriment, responsibility, or loss in exchange for the contract. *Sterling Sav. Bank,* 717 F.Supp.2d at 1149. Plaintiff has failed, as a matter of law, to allege sufficient facts to establish these elements. *Id.; see also, Iqbal,* 129 S.Ct. 1949-50.

Per the Amended Complaint, at contract formation, TMCC supplied Plaintiff with possession of the vehicle and credit for its purchase. Plaintiff took possession of the vehicle and made monthly payments to TMCC until October 2010.[4] Only recently has Plaintiff failed to make his payments, but this equates to a breach in the contract, rather than a failure of consideration for the contract.

Additionally, even if there was a lack of consideration in the original contract, which TMCC disputes, the parties' performance under the contract creates a substitute for consideration. *Armored Group, LLC,* 2010 WL 3940459 (citing *Real Estate Listing Serv., Inc. v. Real Estate Comm'n,* 179 Conn. 128 (Conn.1979)); *Kraft v. Arden,* 2008 WL 4866182, *11 (promissory estoppel can be used as a substitute for consideration.). Further, lack of consideration "is not an independent, cognizable legal claim." *Robinson v. Wells Fargo Bank, N.A.,* 2010 WL 2534192 (D.Ariz.). Therefore, even if Plaintiff were to be able to demonstrate a lack of consideration at contract formation, Count IV still fails as it is not a legally recognized claim, and further, because any defect at contract formation was cured through Plaintiff's five (5) years of vehicle possession and payments to TMCC. Dkt. 12.

As Plaintiff cannot state a legal claim for failure of consideration, Count IV should be dismissed with prejudice. *Iqbal,* 129 S.Ct. at 1949-50; *Vasconcellos,* 2010 WL at *2.

### IV. COUNT V – INJUNCTIVE RELIEF TO ENJOIN VIOLATIONS OF 42 U.S.C. § 1983.

In Count V, Plaintiff seeks the injunctive relief that "any person acting in concert with [TMCC] be enjoined from any repossession efforts during the pendency of this action." Dkt. 12, ¶ 76. The basis for this claim is the allegation that the alleged "threats" to have Plaintiff arrested during the repossession attempt was an "action under color of state law within the meaning of 42 U.S.C. § 1983, and a breach of the peace in aid of an effort to force Plaintiff

---

[4] In paragraph 63, Plaintiff alleges to have sent 56 payments to TMCC towards the balance of his contract, beginning February 2006. Based upon Plaintiff's calculations, although the contract was to continue until January 2012, Plaintiff ceased making payments October 2010.

to relinquish personal property, to wit, the 2000 Prius, and/or to coerce payment of the debt under false pretenses." Dkt. 12, ¶ 72. Finally, Plaintiff alleges that "there exists a substantial risk that any effort at repossession by TFS and TMCC will engage the services of law enforcement personnel whose involvement would constitute state action." Dkt. 12, ¶ 75.

Count V fails for numerous reasons, but the most glaring problem is that Plaintiff has completely misconstrued the meaning of the phrase "under color of state law" upon which a claim for relief pursuant to 42 U.S.C. § 1983 must be based. Section 1983 is applicable only to state actors who attempt to deprive another of a constitutional right without due process of the law, or those acting in conjunction with state actors. 42 U.S.C. § 1983. "A person is acting under the color of state law if 'the conduct allegedly causing the deprivation of a federal right can be fairly attributed to the State.'" *Ford Motor Credit Company v. Ryan*, 189 Ohio App.3d 560, 588, 939 N.E.2d 891, 912 (2010) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Plaintiff's mischaracterization of the standard is curious (at best) considering that the standard is set forth in *Rand v. Porsche Financial Services*, a case which Plaintiff himself cited to in his Amended Complaint at Dkt. p. 5, FN. 1: "Because a person violates § 1983 by depriving another of a constitutional right under color of state law, that section excludes from its purview purely private conduct." *Rand v. Porsche Financial Services*, 216 Ariz. 424, 429, 167 P.3d 111, 116 (App. 2007) (internal citations omitted); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999) ("The party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor. The Court adopted that test because § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong. Indeed, [w]ithout a limit such as this, private parties could face ... litigation whenever they seek to rely on some ... rule governing their interactions with the community surrounding them.") (citation and internal quotation marks omitted).

Plaintiff has not alleged that TMCC is a state actor, nor has Plaintiff alleged that TMCC acted in conjunction with a state actor. Dkt. 12. Quite to the contrary, Plaintiff has

alleged that TMCC is a California corporation, Dkt. 12, ¶ 2, and that Doe 1 and Doe 2 are agents or employees of TMCC, Dkt. 12, ¶ 3-4. Plaintiff has instead underscored his understanding of the requirement that there be a state actor through his prescient allegation that "there exists a substantial risk that any effort at repossession by TFS and TMCC *will engage* the services of law enforcement personnel whose involvement would constitute state action." Dkt. 12, ¶ 75 (emphasis added). Plaintiff's Section 1983 claim is based upon his belief that TMCC may engage State assistance in the future. In any event, Section 1983 contains no mention of "future" action under color of state law, but rather refers to an action which has already taken place. 42 U.S.C. § 1983.

For the foregoing reasons, Plaintiff's claim for injunctive relief under Section 1983 must be dismissed with prejudice and without leave to amend. *Iqbal,* 129 S.Ct. at 1949-50; *Vasconcellos,* 2010 WL at *2.

## **CONCLUSION**

Plaintiff has failed to state a claim for which relief can be granted on Counts I, III, IV and V of his Amended Complaint. Giving Plaintiff leave to correct these errors is futile, because there is an insufficient legal basis to support each of these counts, as a matter of law. Amendment will not, and cannot, cure these deficiencies. Accordingly, Counts I, III, IV and V of Plaintiff's Amended Complaint should be dismissed, with prejudice, and without leave to amend.

Dated this 8th day of April, 2011.

KUTAK ROCK LLP

By    s/   Philip A. Overcash
Philip A. Overcash #022964
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ  85253-2742
(480) 429-5000 (Telephone)
(480) 429-5001 (Facsimile)

*Attorneys for Defendant Toyota Motor Credit Corporation d/b/a Toyota Financial Services*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants. I further certify that I served the attached document by U.S. First-Class Mail to the following who is not a registered participant of the CM/ECF System:

Charles H. Carreon
2165 S. Avenida Planeta
Tucson, AZ 85710

                s/   Kathryn Ann Fitchett
                Certified Paralegal